```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
GIDEON RAVIV, *pro se*,              :
                                      :     **MEMORANDUM AND ORDER
                          Plaintiff,  :     ADOPTING IN PART AND REJECTING
                                      :     IN PART REPORT AND
            -against-                 :     RECOMMENDATION**
                                      :     14-CV-2756 (DLI) (RML)
NCB MANAGEMENT SERVICES               :
INCORPORATED,                         :
                                      :
                          Defendants. :
----------------------------------------------------------- x
```
**DORA L. IRIZARRY, U.S. District Judge:**

On April 17, 2014, *pro se* Plaintiff Gideon Raviv ("Plaintiff" or "Raviv") brought this action against Defendant NCB Management Services Incorporated ("Defendant" or "NCB") in New York State Supreme Court, Queens County alleging breach of contract, *inter alia*. On May 2, 2014, Defendant removed the matter to this Court pursuant to alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* contained in the complaint. On September 18, 2014, the parties reached a settlement on the record in open court to which both parties agreed to be bound. (*See generally* Sept. 19 Conf. Tr., Dkt. Entry No. 8.)

Plaintiff submitted a letter to the Court on December 15, 2014 alleging that Defendant was not in compliance with the terms of the settlement agreement because Defendant had failed to inform the three credit reporting agencies that the debt at issue had been expunged. (Pl. Letter, Dkt. Entry No. 7.) On February 9, 2015, Defendant filed a motion to compel compliance with the aforementioned settlement agreement. (*See generally* Mot. to Compel, Dkt. Entry No. 9.) On April 20, 2015, the Court referred the motion to compel to the assigned magistrate judge for a report and recommendation.

On July 1, 2015, the Honorable Robert M. Levy, U.S.M.J., issued a Report and Recommendation ("R & R") [1] with respect to the parties' Settlement Agreement and Release of Liability ("Settlement Agreement"). Pursuant to the terms of the Settlement Agreement, Defendant agreed to: (1) pay Plaintiff $725.00; (2) waive and/or discharge the balance of the account in the amount of $4,856.93; and (3) request that the reporting of its tradeline be deleted to the extent Defendant had reported the debt to a credit bureau. The magistrate judge recommended that NCB's motion to enforce the Settlement Agreement be granted, and that Defendant be "directed to send [Plaintiff] a copy of the tradeline deletion request that it sent to the credit reporting agencies reflecting that it has discharged the Advanta debt."[2] (R & R at 6, Dkt. Entry No. 10.)

On July 2, 2015, Defendant objected to the recommendation that it send Plaintiff a copy of the tradeline deletion request reflecting its discharge of the debt purchased from Advanta because the terms of the Settlement Agreement already provided that Defendant will waive and/or discharge the debt. (Def. Objection ("Objection"), Dkt. Entry No. 11 at 1.) Defendant further contends that it never has reported any information regarding Plaintiff's Advanta debt because the original Advanta debt was sold to several third parties and then ultimately to Defendant. (*Id.*) Defendant made these same representations during the settlement discussions on September 18, 2014. (Transcript of Sept. 18, 2014 Conference ("Tr.") at 37-42, 68-71, Dkt. Entry No. 8.) Moreover, Plaintiff acknowledged that he understood the terms of the agreement and assented to them. (*Id.* at 39-70.) Plaintiff did not file an objection to the R & R.

---

[1] Familiarity with the R & R, as well as the procedural history and relevant facts of this case, is assumed. (*See generally* Docket Entry 10.)

[2] Advanta Bank Corp. is the company that originally held the debt at issue in this matter. (R & R at 1.)

2

Upon due consideration and for the reasons set forth below, the Court adopts that portion of the R & R that recommends granting Defendant's motion to enforce the Settlement Agreement and rejects that portion recommending that Defendant be directed to send Plaintiff a copy of the tradeline deletion request.

**STANDARDS OF REVIEW**

Where a party objects to an R & R, a district judge must make a *de novo* determination with respect to those portions of the R & R to which the party objects. *See* Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). Portions of the R & R to which the parties have not objected are reviewed for clear error. *See Orellana v. World Courier, Inc.*, 2010 WL 3861013, at *2 (E.D.N.Y. Sept. 28, 2010). The district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1).

As a general matter, settlement agreements negotiated between litigants are fundamentally indistinguishable from other contracts and, thus, must be construed in accordance with general principles of contract law. *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007); *see also Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999). Furthermore, an oral settlement agreement where all of the material terms are agreed to in open court constitutes a binding contract. *United States v. Sforza*, 326 F.3d 107, 116 (2d Cir. 2013); *see also Rispler v. Sol Spitz Co.*, 418 F. Supp. 2d 82, 89 (E.D.N.Y. 2005). "When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that a[sic] choice simply because his assessment of the consequences was incorrect." *Powell*, 497 F.3d at 129.

In assessing the enforceability of settlement agreements, the Court is mindful that, "the Second Circuit, as a general matter, is solicitous of *pro se* litigants, enforcing standards of

procedural leniency rather than holding them to the rigidities of federal practice." *Massie v. Metropolitan Museum of Art*, 651 F. Supp. 2d 88, 93 (S.D.N.Y. 2009). In the context of settlements, "depending on the degree of the *pro se* litigant's sophistication, his understanding of the process and his appreciation of the significance of his agreeing to terms of settlement may be less acute than that of a represented party." *Id*.

It is well settled under New York law that parties are free to enter into a binding agreement without reducing it to writing. *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985); *see also Oparah v. The New York City Dept. of Educ.*, 2015 WL 4240733, *5 (S.D.N.Y. July 10, 2015). In *Winston*, the Second Circuit set forth four factors a court must consider to determine whether an oral or unsigned agreement is enforceable: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston*, 777 F.2d at 80. These factors may be supported by oral testimony, correspondence or other preliminary or partially complete writings. *Id*. at 81. No single factor is dispositive. *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997). Where there is no written document upon which to rely, the evidence of the parties' intent is the determining factor. *Powell*, 497 F.3d at 129; *see also Winston*, 777 F.3d at 80; *Oparah* at *5. The Court has the inherent power to summarily enforce a settlement agreement where the terms are clear and unambiguous. *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437, 444 (2d Cir. 2005) (internal citations and quotation marks omitted). Furthermore, where the settlement is negotiated before the Court on the record, as it is here, the Court's inherent power is particularly clear. *Id*.

## DISCUSSION

A tradeline is a credit industry term signifying an "entry by a credit grantor to a consumer's credit history maintained by a credit reporting agency." *See* Glossary of Credit Terms, EXPERIAN, available at http://www.experian.com/credit-education/glossary.html#t. "A tradeline describes the consumer's account status and activity." *Id*. The information displayed on a tradeline includes "names of companies where the applicant has accounts, dates accounts were opened, credit limits, types of accounts, balances owed and payment histories." *Id*.

Defendant is a debt buyer and third party collection agency. (Motion to Compel Compliance with Settlement Order ("Mot. to Compel") at 1, Dkt. Entry No. 9.) In the instant matter, the tradeline at issue reflects Plaintiff's $4,856.93 Advanta debt that ultimately was purchased by Defendant. (*Id*. at 1-2.) Specifically, Advanta Bank Corp. sold the debt to Vion Holdings, LLC, who then sold it to Fortis Capital IV, LLC, who ultimately sold it to Defendant. (*Id*.) The tradeline had been added to Plaintiff's credit report pursuant to a notification from an affiliate of Advanta Bank Corp. prior to its sale of the debt to various third parties. (*Id*. at 2.)

In applying the four *Winston* factors to the instant matter, there is no evidence in the record that reveals an express or even an implied reservation of a right not to be bound by the terms of the agreement in the absence of a writing. (*See generally* Tr.) Moreover, the settlement agreement at issue ultimately was reduced to a writing in the form of the Settlement Agreement and Release of Liability which had been forwarded to Plaintiff. (*See* Def.'s Letter Resp., Ex. A, Dkt. Entry No. 6.) Given this memorialization of settlement terms in a written document, the Court need not reach the remaining three factors in the *Winston* analysis. However, in deference to Plaintiff's *pro se* status, the Court examines each of those factors in turn.

The settlement agreement was partially performed insofar as Defendant mailed Plaintiff the requisite settlement documents six days after the oral entry of the agreement before the magistrate judge. (*Id.*) The submission of a written settlement draft between opposing parties is sufficient to constitute partial performance of the agreement. *Gildea v. Design Distrib., Inc.*, 378 F. Supp. 2d 158, 161 (E.D.N.Y. 2005). Thus, the second prong of the *Winston* analysis has been satisfied.

The parties stated on the record that they understood the terms of the settlement agreement and did not indicate that they had any material terms to add. (Tr. at 37:16-25; 38:1-25; 39:1-13.) Indeed, Defendant provided an exhaustive explanation to Plaintiff why Defendant could agree to request a tradeline deletion only for any NCB-reported debt on Plaintiff's credit report. (*Id*. at 40:18-25; 41:18-25; 42:1-8.) Therefore, the third *Winston* factor has been satisfied because all of the terms of the settlement agreement have been voluntarily assented to.

Such an agreement to discharge debt is typically memorialized in writing. *See generally Sodhi v. Mercedes Benz Financial Services, USA, LLC*, 957 F. Supp. 2d 252 (E.D.N.Y. 2013). Since the settlement agreement issue was reduced to writing, the fourth and final element in the *Winston* analysis is moot.

Accordingly, the parties entered into an enforceable settlement agreement as reflected in the September 18, 2014 settlement conference. (*See generally* Tr.) Plaintiff did not file an objection to the R & R. Defendant, who brought the motion to compel compliance with the settlement agreement in the first instance, does not dispute the enforceability of the agreement. Instead, Defendant contends that it cannot comply with the additional requirement recommended by the magistrate judge that it send Plaintiff a copy of the tradeline deletion request submitted to the credit reporting agencies reciting its discharge of the $4,856.93 debt it purchased from Advanta

6

Bank Corp. (R & R at 6.) As discussed further below, Defendant is unable to submit such a tradeline deletion request because it did not report the Advanta debt to the credit bureaus in the first instance. Defendant merely purchased the Advanta debt from another third party collection agency. (Mot. to Compel at 1-2.)

During a detailed colloquy between the magistrate judge and Plaintiff, the magistrate judge stated the clear terms of the agreement on the record and ensured that Plaintiff's assent to those terms was knowing and voluntary. (Tr. at 39:3-13.) Similarly, during the course of those on-the-record settlement discussions, Defendant explained that it was unable to order the removal of the Advanta tradeline from Plaintiff's credit report. (*Id*. at 38:8-12.) Specifically, Defendant informed both the magistrate judge and Plaintiff that, notwithstanding its purchase of the debt at issue from the original creditor, Advanta Bank Corp., Defendant did not have control over any tradeline on Plaintiff's credit report that had been reported by a different creditor irrespective of whether Defendant had subsequently purchased that debt. (*Id*. at 37:22-25; 38:1-2.) The parties thereby ultimately agreed that Defendant would issue a tradeline deletion request for any debt reported specifically by Defendant, not any debt reported by prior creditors. (*Id*. at 38:13-28; 39:3-13.) Because Defendant had not reported the aforementioned debt to the credit bureaus, it did not have the requisite authority to request its removal. As such, Plaintiff's demand for a deletion of the Advanta tradeline from NCB is unreasonable and cannot be accommodated. Plaintiff obtained a favorable result in this settlement because Defendant agreed to absolve Plaintiff of the Advanta debt. Defendant is not seeking to rescind that debt waiver, but only asserts it cannot comply with the recommendation of the magistrate judge. Defendant's waiver of the Advanta debt represents its full compliance with the provisions of the Settlement Agreement.

## CONCLUSION

Based upon the foregoing reasons, the Court adopts that portion of the R & R that recommends granting Defendant's motion to enforce the Settlement Agreement, and rejects that portion recommending that Defendant be directed to send Plaintiff a copy of the tradeline deletion request. Accordingly, it is hereby ORDERED that: (1) Plaintiff send Defendant a copy of the executed Settlement Agreement and a W-9; and (2) upon receipt of the executed Settlement Agreement and W-9, (a) Defendant waive and/or discharge the balance of the account made the subject of this action; (b) Defendant request that the reporting of its tradeline be deleted to the extent it has reported the debt at issue to any of the three credit bureaus; and (c) Defendant remit payment of $725.00 to Plaintiff.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2016

/s/
DORA L. IRIZARRY
United States District Judge